IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

COLETTE JENKINS,

Plaintiff,

-vs-

LL ATLANTA, LLC'S d/b/a OPERA
NIGHTCLUB                                                CASE NO.: 1:14-CV-2791
and MGAGE, LLC,

Defendants.
_____/

## PLAINTIFF'S REPLY TO DEFENDANT, LL ATLANTA, LLC'S [DOC. 48] RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Colette Jenkins, by and through her undersigned counsel, hereby files her Reply to Defendant, LL Atlanta, LLC's [Doc. 48] Response to Plaintiff's Motion for Summary Judgment and would state as follows:

### I.   Defendants' Text Messaging System is an ATDS

The intent of Congress, when it established the TCPA in 1991, was to protect consumers from the very exact thing that happened to Plaintiff in this case, to wit: "… from the nuisance, invasion of privacy, cost and inconvenience that autodialed and prerecorded calls generate." 2015 FCC Order, 2015 WL 4387780, *11, ¶29 (FCC July10, 2015). Congress found that consumers consider these types of calls, regardless of the content or the initiator of the message, to be a nuisance

and an invasion of privacy. *Id.* Congress also found that banning these calls, except when made for emergency purposes or when the called party consents to receiving the call, "… is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.*

Congress also envisioned that the language of the TCPA, which was enacted in 1991, might not be able to account for future changes in technology, and that the FCC might need to interpret the TCPA to account for changes in technologies. *Sterk v. Path, Inc.*, 2014 WL 2443785, *4 (N.D. Ill. May 30, 2014), citing to, *In re Rules & Regulations Implementing the TCPA*, 18 FCC Rcd. at 14092-93. In 2003, the FCC adopted rules addressing the technological advances made by the telemarketing industry. *See In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order,* 18 F.C.C. Rcd. 14014, 14017 ¶¶ 1–2, 2003 WL 21517853 (F.C.C. July 3, 2003) (*"2003 Report"* ). Why? Because the FCC sought to ensure that consumers continued to receive the protection from unwanted solicitation calls that Congress intended in enacting the TCPA. *2003 Report* at 14017 ¶ 2. As an example of one such technological advance, and recognizing the proliferation of predictive dialer use in telemarketing, the FCC in 2002 had invited comments on whether predictive dialers fall within the restrictions placed on ATDS's. *See 2003 Report* at 14090 ¶

129. A predictive dialer is defined as "equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls." *2003 Report* at 14091 ¶ 131. Moreover, "[t]he hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, *or from a database of numbers.*" *2003 Report* at 14091 ¶ 131 (emphasis added). The FCC acknowledged that the "basic function" remained the same—namely, "the *capacity* to dial [phone] numbers [en masse] without human intervention" or oversight. *2003 Report* at 14092 ¶ 132. In 2008, the FCC issued a Declaratory Ruling <u>reaffirming</u> that "a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling,* 23 F.C.C. Rcd. 559, 556 ¶ 12, 2008 WL 65485 (F.C.C. Jan.4, 2008) (*"2008 Declaratory Ruling"* ); see also, *Meyer v. Portfolio Recovery Associates, LLC,* 707 F.3d 1036, 1043 (9th Cir. 2012), *cert. denied,* --- U.S. ---, 133 S.Ct. 2361 (2013), *Swope v. Credit Mgmt., LP,* No. 12CV832, 2013 WL 607830 at 4 (E.D. Mo. Feb. 19, 2013), and *Vance v. Bureau of Collection Recovery, LLC,* No. 10-cv-06324, 2011 WL 881550 at 2 (N.D. Ill. March 11, 2011).

And now, technological advances have brought us here to Defendants' use of its web-based internet to phone text messaging system, which, by design, had as its purpose to send promotional SMS text messages to large groups of cell phone numbers at the same time from a set list (or file) of cell phone numbers. (Depo. Scholl, pp. 11-12). 2015 FCC Order, 2015 WL 4387780, *6 (FCC)(July 10, 2015). In their arguments, Defendants have asked this Court to overlook that plain and simple fact, and also to ignore the opinions and rulings of the FCC. Instead, Defendants desire that the Court focus its attention not on Defendants' own conduct, but rather on Defendants' disparaging accusations against Plaintiff, all-the-while attempting to create confusion as to its text messaging system through the use of hyper-technical jargon. However, this hyper-technical gobble-de-gook cannot obscure the reality in this case.

First, as to Defendants' contention that its system cannot "dial," the FCC and case law has made it abundantly clear that SMS text messages are subject to the same consumer protections under the TCPA as voice calls. 2015 FCC Order, 2015 WL 4387780, *37, ¶ 107 (FCC)(July 10, 2015); 2003 FCC Order, 18 FCC Rcd. At 14115, ¶ 165(noting that text messaging is a form of communication used primarily between telephones and is therefore consistent with the definition of "call"); see also, *Satterfield v. Simon & Schuster*, 569 F. 3d 946 (9th Cir. 2009).

4

And yes, that would also include SMS text messages sent to end cell phone users by way of use of a web-based interface or platform like Defendants' here. 2015 FCC Order, 2015 WL 4387780, *37, ¶ 107 and *39, ¶ 108-113(FCC)(July 10, 2015); see also, *Rules and Regulations Implementing the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003, Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket Nos. 04-53, 02-278, Order, 19 FCC Rcd 15927, 15933, para. 14 n.48 (2004) (*CAN-SPAM Order*).

In analyzing internet to phone text messaging systems such as Defendants here, the FCC has found that such "… internet-to-phone text messaging is functionally equivalent to phone-to-phone text messaging, which the Commission has already confirmed falls within the TCPA's protection… And the potential harm is identical to consumers; unwanted text messages pose the same cost and annoyance to customers, regardless of whether they originate from a phone or the Internet.  Finding otherwise – that merely adding a domain to the telephone number means the number has not been 'dialed' --- when the effect on the recipient is identical, would elevate form over substance, thwart Congressional intent that evolving technologies not deprive mobile consumers of the TCPA's protections, and potentially open a floodgate of unwanted text messages to wireless

consumers." 2015 FCC Order, 2015 WL 4387780, *39, ¶¶ 114-115 (FCC)(July 10, 2015). The FCC stated that it finds it "… reasonable to interpret 'dial' to include the act of addressing and sending an Internet-to-phone text message to a consumer's wireless number." 2015 FCC Order, 2015 WL 4387780, *38, ¶ 112 (FCC)(July 10, 2015).

Second, whether a system uses a random or sequential number generator when sending such messages is irrelevant. As stated by the FCC in its 2015 FCC Order, "… the Commission has also long held that the basic functions of an autodialer are to 'dial numbers without human intervention' and to 'dial thousands of numbers in a short period of time." 2015 FCC Order, 2015WL 4387780, ¶17, fn. 67 (FCC)(July 10, 2015). In its 2015 FCC Order, the FCC stated,

> "10. We reaffirm our previous statements that dialing equipment generally has the capacity to store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of "autodialer") even if it is not presently used for that purpose, **including when the caller is calling a set list of customers**." 2015 FCC Order, 2015 WL 4387780, *6 (FCC)(July 10, 2015)(emphasis added).

As this Court has recently noted, the reasoning for this FCC interpretation is "that 'the purpose of the requirement that equipment have the capacity to store or produce telephone numbers to be called' is to ensure that the prohibition on autodialed calls not be circumvented." *Brown v. Credit Management, LP*, --- F.

6

Supp. 3d ---, 2015 WL 5480004 (N.D. Ga. Sept. 16, 2015). Defendants' system, as to just the Opera texting campaign alone, stored a file consisting of 10,000 to 50,000 cell phone numbers, and sent text messages to the numbers on the list. (Depo. Scholl, p. 14, l. 2-7; p. 16, l. 16-24; p. 62, l. 19-22; p. 63, l. 13; p. 82, l. 14-21; Depo. Green, p. 23, l. 1-6). Where such numbers would remain until removed. (Depo. Scholl, p. 20, l. 1-9; p. 23, l. 19).

Third, as noted in Plaintiff's Motion for Summary Judgment and Response in Opposition to Defendants' Motion for Summary Judgment, the choosing of the content of a message and when that message would be delivered to the 10,000 to 50,000 cell phone numbers on the list is not "human involvement" so as to invalidate the text messaging system as an ATDS. As explained in Plaintiff's prior briefs, if any human involvement would necessitate the invalidation of a system as an ATDS, then there would be no such system that could ever be considered an ATDS. Rather, affirmative steps taken by an individual sending the text message such as determining whether to send a text message, choosing to whom to send an text message, and choosing when that text message is sent,' are determinative of who is the maker of the text message; not whether a system is an ATDS. 2015 FCC Order, 2015WL 4387780, ¶37 (FCC)(July 10, 2015). Once the alleged "human involvement" of what to send and to who ended, the text messaging

7

system would automatically route hundreds of million text messages to ultimate end cell phone users at the same time. (Depo. Scholl, pp. 60-63). Here, Defendants' texting system had the capacity to deliver multiple text messages a day, and those messages could be scheduled for a later deliver by pre-selecting the specific date and time of the delivery. (Depo. Green, p. 23, l. 23-25; p. 24, l. 1-4; Depo. Penaflorida, p. 14, l. 21-24). Between two (2) to five (5) to six (6) hours later in the day messages could be programmed to be automatically sent. (Depo. Penaflorida, p. 20, l. 23-24). Defendants' text messaging system processed over 5 billion messages per month. (Depo. Scholl, p. 60, l. 8-9). How is that not automated?

Specifically, the FCC was asked to address whether Internet-to-phone text messaging was a type of ATDS and thus required consumer consent. 2015 FCC Order, 2015WL 4387780, *37, ¶ 108 (FCC)(July 10, 2015). The FCC concluded "…that Internet-to-phone text messages, including those sent using an interconnected text provider, require consumer consent." *Id.* In clarifying exactly what a Internet-to-phone text messaging system was, the FCC stated:

> "As described in the Petition and discussed herein, Internet-to-phone text messaging technology enables the sending of messages from a computer to a wireless phone. The messages originate as electronic mail (e-mail) sent to a combination of the recipient's unique telephone number and wireless provider's domain name. They are automatically converted by the wireless provider into a text message format that is

delivered to the consumer's wireless phone over the wireless provider's network. Alternatively, the message enters the wireless provider's network via the carrier's web portal and is then converted to a text-message format and delivered to the consumer's wireless phone over the wireless provider's network. *Id.* at 2 n.1, 4-5."
(See 2015 FCC Order, 2015WL 4387780, *37, ¶ 108, fn. 369 (FCC)(July 10, 2015)).

This is exactly what Defendants' text messaging system is, and the FCC has found that to be an ATDS. The system not only had the capacity, but did in fact store or produce cell phone numbers to call (10,000 to 50,000 cell phone numbers in a file for this text campaign alone), and then dial those numbers. 2015 FCC Order, 2015WL 4387780, *9-*10, ¶¶ 23-25 (FCC)(July 10, 2015). Recently, the Third Circuit vacated a district court opinion granting summary judgment in favor of Defendant, Yahoo!, Inc., on the ATDS issue in a text-messaging case involving a reassigned telephone number due to the unresolved "capacity" issue and in light of the FCC's July 10, 2015 declaratory ruling. See *Dominguez v. Yahoo, Inc.*, --- Fed. Appx. ---, 2015 WL 6405811 (3rd Cir. 2015).

## II. Defendants NEVER Had Plaintiff's Prior Express Consent

It is undisputed that Defendants never had Plaintiff's prior express consent to receive these 149 promotional text messages. Opera has admitted that Plaintiff,

9

"… never personally opted-in to receive promotional text messages from Opera." (See [Doc. 48, p. 17 of 27]). The Eleventh Circuit has made it clear that prior express consent must be given not by who Defendants intended to call (i.e. the intended recipient), but by the current subscriber or regular user of the cell phone. See *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014); *Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265 (11th Cir. 2014). So has the FCC. 2015 FCC Order, 2015 WL 4387780, *26, ¶¶ 72-74 (FCC July 10, 2015)(Noting that the TCPA's legislative history buttresses this interpretation, stating that it is the "receiving party" – not the intended party – that consents to the call).

For reassigned cell phone numbers, the FCC has recently allowed for one (1) additional call/text to be sent after reassignment before a defendant is deemed to have constructive knowledge of such. 2015 FCC Order, 2015 WL 4387780, *26, ¶ 72 (FCC July 10, 2015). So pursuant to the FCC's recent ruling, Defendants are deemed to have had constructive knowledge as to 148 of the 149 total text messages; and actual knowledge as to the 128 text messages sent after Defendants received Plaintiff's first reply text to stop which was sent by Plaintiff on August 28, 2013. (Scholl Depo. Exs. 3, 4, & 5).

## III. Defendants' Text Messages Were Sent Willfully or Knowingly

Defendants' argument in this regard is that they should not be charged with knowledge of what is in their own records (i.e. Plaintiff's 17 reply text messages asking the messages to stop). It appears that Defendants are contending that its text messaging system is so complicated and/or so automated that it is incapable of flagging or otherwise bringing to the attention of its principles when a person wants simply wants the text messages to stop. The FCC has spoken directly on this issue. For reassigned cell phone numbers, the FCC has recently allowed for one (1) additional call/text to be sent after reassignment before a defendant is deemed to have constructive knowledge of such. 2015 FCC Order, 2015 WL 4387780, *26, ¶ 72 (FCC July 10, 2015). Also, it cannot be overlooked that the first time any of Defendants text messages gave Plaintiff any instruction whatsoever as to what she should do to get the messages to stop, was on May 27, 2014, when the messages started including the language *"Reply STOP to end."* (Depo. Scholl, p. 72, l. 17-25 and p. 73, l. 1-10). Businesses, like Defendants, "… should institute new or better safeguards to avoid calling reassigned wireless numbers and facing TCPA liability." 2015 FCC Order, 2015 WL 4387780, *26, ¶ 72 (FCC July 10, 2015).

Recently, in *Mcbeth v. Credit Prot. Ass'n, L.P.*, No. 8:14-CV-606-T-36AEP,

11

2015 WL 4429324, *3 (M.D. Fla. July 20, 2015), the Middle District Court of Florida held that to establish a knowing or willful violation under the TCPA, a plaintiff must prove that the defendant knew that it did not have consent to call the plaintiff's cellular phone number. Here, Defendants are charged with that constructive knowledge for 148 of the 149 text messages per the recent 2015 FCC Order. Here also, Defendants knew that Plaintiff wanted the messages to stop as far back as August 28, 2013. (Scholl Depo. Exs. 3, 4, & 5). Yet Defendants sent an additional 128 text messages after that date.

For Defendants to claim they never received Plaintiff's numerous reply text messages asking that they stop sending such text messages belies any explanation. Plaintiff communicated her requests to stop the messages in the same fashion (by text) that Defendants communicated to Plaintiff. Here, Plaintiff did so seventeen (17) times before the messages stopped. (Scholl Depo. Exs. 3, 4, & 5). "A caller may not limit the manner in which revocation (of consent) may occur." 2015 FCC Order, 2015 2015WL 4387780, ¶47 (FCC)(July 10, 2015). It is Defendants' own records that reveal Defendants' receipt of these seventeen (17) reply text messages from Plaintiff, each pleading that Defendants stop sending the text messages. (Scholl Depo. Exs. 3, 4, & 5).

## IV. The FCC's Rulings Have the Force of Law

Congress has conferred upon the FCC general authority to make rules and regulations necessary to carry out the provisions of the TCPA. 47 U.S.C. § 227(b)(2). The TCPA also emphasizes that the FCC should have the flexibility to design different rules for those types of automated or prerecorded calls that it finds are not considered a nuisance or invasion of privacy. See *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, *1117-8 (11th Cir. 2014). There is no exemption for automated or prerecorded calls/text messages made to wireless cell phones without the prior express consent of the called party. Why? Because they are a nuisance, an invasion of privacy, interfere with interstate commerce, and banning such calls/text messages is the only effective means of protecting telephone consumers from this nuisance and invasion of privacy. 2015 FCC Order, 2015 2015WL 4387780, ¶29 (FCC)(July 10, 2015)(citing to Telephone Consumer Protection Act, Pub. L. No. 102-243, § 2 (1991). When the FCC has issued a ruling, a district court exceeds its jurisdiction by attempting to declare a FCC Ruling to be inconsistent with the TCPA. *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, *1119 (11th Cir. 2014).

## V. Plaintiff's "Factual Background"

Finally, Defendants argue that because Plaintiff incorporated in Plaintiff's Motion for Summary Judgment, a separate "Factual Background" and did not file a separate pleading setting forth those identical factual allegations, that such was a violation of Local Rule 56.1(B)(1) and those factual allegations should not be considered.

Such an incorporation was inadvertent, due to mistake and/or carelessness, and Plaintiff respectfully requests that this Honorable Court permit the filing of Plaintiff's "Statement of Facts", out of time, pursuant to Fed. R. Civ. P. 6(b)(1)(B). (See [Doc. 54]). Federal Rule of Civil Procedure 6(b)(1) provides that when a party files a motion after the time for doing so expires, a court may, for good cause, extend the time "if the party failed to act because of excusable neglect." Fed.R.Civ.P. 6(b)(1)(B).

Here, Plaintiff submits that the failure to timely file a separate Statement of Facts was not prejudicial to Defendants in light of the fact that the "Factual Background" section of Plaintiff's [Doc. 34] Motion for Summary Judgment did contain concise, numbered statements of material facts to which Plaintiff contended there was no genuine issue to be tried, each fact was supported by the

citation to record evidence which was timely filed, and the timely filing of all other pleadings and record evidence filed by Plaintiff in this cause.

### Page and Type Certification

Pursuant to LR 7.1D, N.D. Ga., counsel certifies that this brief has been prepared with one of the font and point selections approved by the Court in LR 5.1B.

/s/ *Madeleine N. Simmons*
Madeleine N. Simmons, Esquire
GA Bar # 822807
191 Peachtree Street, Suite 4200
P.O. Box 57007
Atlanta, GA 30343
Telephone (404) 965-8811
Fax (404) 965-8812
msimmons@forthepeople.com

and

Michael J. Vitoria, Esquire
FL Bar # 0135534
Morgan & Morgan, P.A.
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele: (813) 223-5505
mvitoria@ForThePeople.com
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on 26th October, 2015, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following CM/ECF participants: Hayden Pace, Esq., Stokes, Wagner, Hunt, Maretz & Terrell, 3593 Hemphill Street, Atlanta, GA 30337; Peter F. Schoenthaler, Esq., Peter F. Schoenthaler, PC, 3350 Riverwood Parkway, Suite 1900, ATL, GA 30339.

/s/ Madeleine N. Simmons
Madeleine N. Simmons, Esquire
GA Bar # 822807
191 Peachtree Street, Suite 4200
P.O. Box 57007
Atlanta, GA 30343
Telephone (404) 965-8811
Fax (404) 965-8812
msimmons@forthepeople.com

and

Michael J. Vitoria, Esquire
FL Bar # 0135534
Morgan & Morgan, P.A.
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele: (813) 223-5505
mvitoria@ForThePeople.com
Attorneys for Plaintiff