**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

COLLETTE JENKINS

       Plaintiff,

v.

LL ATLANTA, LLC d/b/a OPERA
NIGHT CLUB and MGAGE, LLC,

       Defendants.

Civil Action No.: 1:14-cv-2791

**DEFENDANT MGAGE, LLC'S RESPONSE TO PLAINTIFF COLLETTE
JENKINS' STATEMENT OF ADDITIONAL FACTS IN SUPPORT OF
PLAINTIFF'S [DOC. 34] MOTION FOR SUMMARY JUDGMENT AND IN
OPPOSITION TO MGAGE'S [DOC. 36] MOTION FOR SUMMARY
JUDGMENT AND [DOC. 36-3] MEMORANDUM OF LAW IN SUPPORT**

COMES NOW Defendant mGage, LLC (hereinafter "mGage"), by and

through counsel and pursuant to LR 56.1(B)(3), and files this, its response to

Plaintiff's statement of additional material facts, as well as those facts contained in

Plaintiff's Motion to Strike and/or Response Brief in Opposition to mGage's

Motion for Partial Summary Judgment. *See* Docket Nos. 46 and 47.

As discussed in more detail in Defendant mGage, LLC's Reply to Plaintiff's

Motion to Strike and/or Response Brief in Opposition to mGage's Motion for Partial Summary Judgement filed contemporaneously herewith, Plaintiff filed a Statement of Additional Material Facts, but set forth additional facts in "Factual Background", as well as in the legal argument portions of her brief in violation of the local rules of this court.  See LR 56.1B(2)(b), which requires that a statement of additional material facts meet the requirements set out in LR 56.1B(1). LR56.1B(1)(d) states that "the court will not consider any fact: . . . (d) set out only in the brief and not in the [] statement of undisputed facts". (Emphasis added). mGage cannot respond to a non-existent statement of undisputed facts.  mGage objects to each and every fact alleged in Plaintiff's Motion to Strike and/or Brief in Opposition of mGage's Motion for Partial Summary Judgement, but not in Plaintiff's Statement of Additional Material Facts.  See LR56.1B(1)(d).  Out of an abundance of caution, mGage responds to these facts in Section II and Section III of this response.

Historically, this Court has refused to consider any fact set out only in a brief and not in a separate statement of material facts.  See LR 56.1(B)(1)(d).  *See Evans v. Boyd Rest. Grp., LLC*, CIV.A.1:04CV1144RWS, 2008 WL 2571412, at *1 (N.D. Ga. June 23, 2008) (ruling that "Plaintiff has failed to attach the required statement of material facts. Accordingly, Plaintiff's Motion for Summary Judgment

must, for that reason alone, be denied."); *Dalton v. State Farm Fire & Cas. Co.*, 1:12-CV-02848-RWS, 2013 WL 1213270, at *6-7 (N.D. Ga. Mar. 22, 2013) (ruling, "In this case, Plaintiffs have failed to file a statement of material facts in support of their motion, in violation of this rule [L.R. 56.1(B)(2)(a). Accordingly, the Motion for Partial Summary Judgment is DENIED."); *Hopkins v. DeVeaux*, 781 F. Supp. 2d 1283, 1296 (N.D. Ga. 2011)(denying Plaintiff's Motion for Summary Judgment where Plaintiff failed to include a document remotely similar to a statement of material facts as required by LR 56.1(B)(1)).

## I.     mGage's Response to Plaintiff's Statement of Additional Material Facts

mGage responds to Plaintiff's Statement of Additional Material Facts as follows:

1.     On February 19, 2015, the parties agreed to and filed a [Doc. 22] Amended Joint Preliminary Report and Discovery Plan.

**Response:**  mGage does not dispute the allegations set forth in Paragraph No. 1.

2.     This Court entered an [Doc. 23] Order on the parties' [Doc. 22] Amended Joint Preliminary Report and Discovery Plan on February 23, 2015.

**Response:** mGage does not dispute the allegations set forth in Paragraph No. 2.

3.     Pursuant to this Court's [Doc. 23] Order, the discovery period in this action commenced on March 2, 2015 and expired on July 30, 2015.

**Response:**  mGage does not dispute the allegations set forth in Paragraph No. 3.

4.     Pursuant to the parties' [Doc. 22] Amended Joint Preliminary Report and Discovery Plan and this Court's [Doc. 23] Order, the parties' agreed to exchange initial disclosures by March 9, 2015.

**Response:**  mGage does not dispute the allegations set forth in Paragraph No. 4.

5.     Pursuant to the parties' [Doc. 22] Amended Joint Preliminary Report and Discovery Plan and this Court's [Doc. 23] Order, the parties set forth the subjects of which discovery may be needed and mGage failed to set forth any of the issues and/or facts which form the basis of mGage's [Docs. 36 & 36-3] Motion for summary Judgment/Memorandum of Law.

**Response:**  mGage objects pursuant to LR 56.1(B)(3) on the basis that the phrase "mGage failed to set forth any issues and/or facts which form the basis of mGage's Motion . . ." is stated as an issue or legal conclusion in violation of  LR 56.1(B)(1)(c).  Plaintiff's fact is inaccurate. The discovery topics which form the basis of mGage's Motion for Partial Summary Judgment as set forth by Plaintiff in

the Amended Joint Preliminary Report and Discovery Plan, specifically included: (1) "the identity of those who called and/or communicated[1] with Plaintiff" and (2) "any non-parties Defendants contend are or may be liable for the claims asserted". *See* Docket No. 22, p. 10-11.   mGage was under no obligation to duplicate Plaintiff's response.

6.   Pursuant to the parties' [Doc. 22] Amended Joint Preliminary Report and Discovery Plan and this Court's [Doc. 23] Order, the parties set forth the legal issues to be tried and mGage failed to set forth any of the issues and/or facts which form the basis of mGage's [Docs. 36 & 36-3] Motion for summary Judgment/Memorandum of Law.

**Response:**  mGage objects for two reasons pursuant to LR 56.1(B)(3).  First, respondent's evidence does not support the respondent's fact.  The Joint Preliminary Report and Discovery Plan lists among the legal issues to be tried, "whether the acts or omissions of third parties caused Plaintiff's to receive unauthorized text message transmissions". *See* Docket No. 22, p.4 and Docket No. 23, p. 4.   This phrase accurately describes the legal issue, namely third-party Velti and third-party Air2Web's acts or omissions prior to mGage's purchase of the

---

[1] mGage's failure to object or make a detailed note of Plaintiff's use of the term "call" in this Response with regard to mGage's alleged role in the process by which Plaintiff allegedly received text messages advertising Opera's events is only be interpreted as a practical choice.

Air2Web Agreement, which underlies mGage's Motion for Partial Summary Judgment.

Second, the phrase "mGage failed to set forth any of the issues and/or facts which form the basis of mGage's [Docs. 36 & 36-3] Motion for summary Judgment/Memorandum of Law." is stated as an issue or legal conclusion in violation of LR 56.1(B)(1)(c).

7.     Pursuant to the parties' [Doc. 22] Amended Joint Preliminary Report and Discovery Plan and this Court's [Doc. 23] Order, the parties' set forth any pending related cases and/or an previously adjudicated related cases, and mGage agreed that the only pending related case applicable to this action was the case of

**Response:**  mGage does not dispute the allegations set forth in Paragraph No. 7 as there was no obligation to set forth the Chapter 11 bankruptcy action as it is not a "pending" or "previously adjudicated related" case.  mGage's disclosed the underlying bankruptcy on April 21, 2015, early in the discovery period [Docket No. 47, p. 8-9, ¶ 4].

8.     mGage has not yet answered Plaintiffs Amended Complaint.

**Response:** mGage does not dispute the allegations set forth in Paragraph No. 8.  Pursuant to Fed. R. Civ. P. ("F.R.C.P.) 12(b)(6) and F.R.C.P. 8, mGage

filed a Motion to Dismiss, which has not yet been ruled on by the Court. *See* Docket No. 24.

9.     mGage has failed to serve any Rule 26 Initial Disclosures in this action, or supplements thereto.

**Response:** mGage does not dispute the allegations set forth in Paragraph No. 9; however its failure to serve such disclosures was unintentional.  mGage was unaware of this omission until October 2, the business day proceeding the date on which Plaintiff's Response to mGage's Motion for Partial Summary Judgment was filed.  See Email from Michael Vitoria Dated October 2, 2015, attached as Exhibit 1, hereto.   Had mGage been aware of or been notified about this omission earlier, mGage would have fixed this error and provided disclosures immediately.

10.     Other than the applicable service agreements and amendments, the first time mGage served and/or produced the documents [Doc. 36-13, 36-14, and 36-16 through Doc. 36-24] which were filed by mGage as part of mGage's [Doc. 36-1] Notice of Filing of its Motion for Partial Summary Judgment During previous Ownership was contemporaneously with its Notice of Filing date August 31, 2015.

**Response:**  mGage does not dispute the allegations set forth in Paragraph No. 10; however mGage does not have an obligation to produce documents that

were not requested during discovery.  Plaintiff never asked any questions or sent any requests for information about the Bankruptcy proceedings disclosed to Plaintiff on April 21, 2015 and thereafter in the document production, despite being provided emails showing that it took place and some of the salient details. See Email from Peter Schoenthaler to Michael Vitoria dated April 21, 2015, attached as <u>Exhibit 2</u>, hereto, Docket Nos. 36-15 and 36-26.  To the extent that any of the documents referenced by Plaintiff were responsive to any of Plaintiff's discovery request, Plaintiff had sufficient information to seek any allegedly omitted documents by following-up with mGage about such documents.

11.   Plaintiff served mGage with Requests for Production which asked for "any contract or agreement between Co-Defendants related to the sending of text messages to "Plaintiffs cellular telephone number" during the relevant period," and documents [Doc. 36-13 through Doc. 36-24] were not produced. (See Exhibit "A"- mGage's May 27, 2015 Objections and Responses to Plaintiffs First set of Requests for Production to Defendant, Request/Response No. 2). The defined relevant period having been specifically defined by Plaintiff therein as "*Relevant time-period" or "relevant period" shall mean the period of August 1, 2013 to the present date, or the date of the very last text sent by Defendant to Plaintiff's cellular telephone number (whichever occurred later).*

**Response:** mGage objects pursuant to LR 56.1(B)(3) because respondent's evidence does not support the respondent's fact. Docket No. 36-15, an email, which is not responsive to the request cited by Plaintiff, was produced by mGage during discovery, as evidenced by the bates label affixed in the bottom right-hand corner.  In addition to Docket No. 36-15, *none* of the documents cited by Plaintiff are contracts and agreements between Co-Defendants.   mGage was not obligated to produce Docket Nos. 36-13 through 36-24 pursuant to Request No. 2, stated above. If Plaintiff believed that mGage did not provide a sufficient response to Request No. 2, Plaintiff had the ability, opportunity, and right to address the issue with counsel or file a motion to compel.

12.     MGage provided Opera with its web-based platform whereby Opera could upload message content into the platform and also determine to whom the messages would be sent. (Depo. Scholl, p. 16, l. 16-24; Depo. Green, p. 18, l 5-24).

**Response:**  mGage objects pursuant to LR 56.1(B)(3) because respondent's evidence does not support the respondent's fact.   Plaintiff's requests were not as expansive as Plaintiff contends.

First  Request  No.  4  asked  for  "Documents  evidencing  the  contract  or agreement which Defendant contends authorized Defendant to place text messages to "Plaintiff's cellular telephone number" using an "automatic telephone dialing

system". *See* Docket No. 46-1. First, this request appears to ask for a primary document that would serve as the basis for authorization, not *any and all* contracts giving such authorization. *See id.* Further, the primary document that would serve as the basis for authorization would have been the Air2Web Agreement, which mGage did produce during discovery. See Docket No. 36-10. Second, as mGage stated in its answer it does not use an "automatic telephone dialing system". Therefore, it does not have any documents responsive to Request No. 4. If Plaintiff believed that mGage did not provide a sufficient response to Request No. 4, Plaintiff had the ability, opportunity, and right to address the issue with counsel or file a motion to compel.

Request No. 5 was nearly identical to Request Number 4, except instead of using the term "Automatic Telephone Dialing System", it read "Defendant's dialer system". Defendant does not *dial*. [Docket Nos. 37-3, and 46-1, p. 9]. Therefore, mGage would not have any documents responsive to this request. If Plaintiff believed that mGage did not provide a sufficient response to Request No. 5, Plaintiff had the ability, opportunity, and right to address the issue with counsel or file a motion to compel.

13. Plaintiff also asked for "all documents which identify the name, address, and telephone number of any person or entity Defendant knows or claims

may be responsible and/or liable, in whole or in part, for the claims asserted against Defendant in this lawsuit," and documents [Doc. 36-13, 36-14, and 36-16 through  Doc. 36-24] were not produced. (See Exhibit "A" - mGage's May 27, 2015 Objections and Responses to Plaintiffs First Set of Requests for Production to Defendant, Request/Response No. 21).

**Response:** mGage does not dispute the allegations set forth in Paragraph No. 13; however it would not have been feasible for mGage to produce **"all documents"** identifying the name address, and telephone number of any person or entity that may be responsible or liable as such response would require production of every Velti, Inc. and Air2Web, Inc. document that lists its contact information, i.e. millions of documents and emails.  Instead, mGage objected on the grounds that Request No. 21 was overly broad, among others and produced hundreds of responsive documents including, but not limited to the contract between Air2Web, Inc. and Social Study Media, Inc., assignment of the Air2Web Agreement to Velti, Inc., emails between Air2Web and Velti employees with Opera employees (including those disclosing the bankruptcy and acquisition by GSO to Opera) and monthly bills sent by Air2Web, Inc. and Velti, Inc. to Opera, among others. If Plaintiff believed that mGage did not provide a sufficient response to Request No.

21, Plaintiff had the ability, opportunity, and right to address the issue with counsel or file a motion to compel.

14.     Plaintiff also asked for "all documents that support the factual basis of defendant's denial of any allegation alleged in Plaintiffs Complaint," or in support of any affirmative defenses, and documents [Doc. 36-13, 36-14, and 36-16 through Doc. 36-24] were not produced. (See Exhibit "A" - mGage's May 27, 2015 Objections and Responses to Plaintiffs First set of Requests for Production to Defendant, Request/Response No. 25 & 26).

**Response:**  mGage does not dispute the allegations set forth in Paragraph No. 14; however, as stated above, mGage produced hundreds of documents responsive to this request.  If Plaintiff believed that mGage fully comply with Request Nos. 25 and 26, Plaintiff had the ability, opportunity, and right to address the issue with counsel or file a motion to compel.

15.     On March 25, 2015, Plaintiff served mGage with Plaintiffs Notice of taking Telephonic deposition Duces Tecum of Defendant, mGage, LLC which again asked for the production of the items set forth in Paragraphs eleven (11) through fomteen (14) herein; and same was objected/responded to by mGage via Defendant's Objections to Plaintiff Notice of Rule 30(b)(6) Deposition of mGage, LLC on May 27, 2015 (the day before Mr. Harvey Scholl's May 28, 2015

deposition). (See Exhibit "B" - Plaintiffs March 25, 2015 Rule 30(b)(6) Deposition Notice and mGage's May 27, 2015 Objections/Responses to same).

**Response:** mGage does not dispute that Plaintiff's Notice of 30(b)(6) Deposition asked for the production of the items in Plaintiff's First Request for Production of documents. With regard to the remaining portions of Paragraph No. 15, Plaintiff objects or does not dispute for those reasons listed in the Responses to Paragraph Nos. 11-14, above. If Plaintiff believed that mGage did not fully comply with the listed Requests, Plaintiff had the ability, opportunity, and right to address the issue with counsel or file a motion to compel.

16. Mr. Scholl did not bring with him any documents to his deposition. (Depo. Scholl, p. 9 & 10).

**Response:** mGage objects to and disputes Paragraph No. 16 because respondent's fact is not material. See LR 56.B(3)(c).

17. Between the time period of January 4, 2014 through July 2, 2014, Defendants sent fifty-five (55) non-emergency text messages to Plaintiff's cellular telephone number without Plaintiff's prior express consent. (See Exhibit "C" - Scholl Depo Ex. # 4).

**Response:** mGage does not dispute the content of facts set forth in Paragraph No. 17 aside from Plaintiff's use of the word "sent". mGage did not

send any text messages to Plaintiff.  mGage does not send text messages to anyone. mGage routes its clients text messages to the carriers by connecting to the carriers' short messaging service centers ("SMSCs").  [Docket Nos. 42, ¶¶ 49, 53 and 91]. The carriers ultimately deliver the text messages to individual recipients.  [Docket No. 42, ¶ 57].  Opera is responsible for the content of all text messages received by Plaintiff.  [Docket No. 42-3, p. 11 and Docket No. 42, ¶¶ 68, 70].  Further, Opera is responsible for selecting the recipient of its text messages.  [Docket No. 42, ¶ 24]. Opera was responsible under its Service Agreement with mGage for obtaining any consent required prior to send out its promotional text messages. [Docket No. 42, ¶ 27].  Opera is responsible for selecting the frequency, date, and time that text messages were sent to Plaintiff.  [Docket No. 42, ¶¶ 71-72].  The record shows that Opera is ultimately the party that sent out the text messages at issue in this case.

16.   Defendants' received Plaintiffs January 18, 2014 reply text message asking Defendants to stop sending text messages, but Defendants continued to send an additional fifty-one (51) non-emergency text messages to Plaintiffs cellular telephone number without Plaintiff's prior express consent. (See Exhibit "C" - Scholl Depo Ex. # 4).

**Response:** mGage objects to and disputes dispute the content of facts set forth in Paragraph No. 16(b)[2] because respondent's fact is not material to mGage's Motion for Partial Summary Judgment, which only involves those text messages allegedly received by Plaintiff ***prior*** to January 4, 2014.   See LR56.B(3)(c). mGage further objects to Plaintiff's use of the word  "sent" because such word usage is not supported by the record.  mGage did not send any text messages to Plaintiff.  mGage does not send text messages to anyone.  mGage routes its clients text messages to the carriers by connecting to the carriers' short messaging service centers ("SMSCs").  [Docket Nos. 42, ¶¶ 49, 53 and 91].  The carriers ultimately deliver the text messages to individual recipients.  [Docket No. 42, ¶ 57].  Opera is responsible for the content of all text messages received by Plaintiff.  [Docket No. 42-3, p. 11 and Docket No. 42, ¶¶ 68, 70].  Further, Opera is responsible for selecting the recipient of its text messages.  [Docket No. 42, ¶ 24].  Opera was responsible under its Service Agreement with mGage for obtaining any consent required prior to send out its promotional text messages. [Docket No. 42, ¶ 27]. Opera is responsible for selecting the frequency, date, and time that text messages

---

[2] Plaintiff's Statement of Additional Material Facts contains two Paragraph No. 16s and two Paragraph No. 17.  To avoid confusion, mGage will refer to the second Paragraph Nos. 16 and 17 as Paragraph Nos. 16(b) and 17(b).

were sent to Plaintiff.  [Docket No. 42, ¶¶ 71-72].  The record shows that Opera is ultimately the party that sent out the text messages at issue in this case.

17.     Defendants received Plaintiff's February 26, 2014 and June 25, 2014 reply text messages asking Defendants to stop sending text messages, but Defendants continued to send additional non-emergency text messages to Plaintiff's cellular telephone number without Plaintiffs prior express consent. (See Exhibit "C" - Scholl Depo Ex. # 4 ).

**Response:**  mGage objects to and disputes dispute the content of facts set forth in Paragraph No. 17(b) because respondent's fact is not material to mGage's Motion for Partial Summary Judgment, which only involves those text messages allegedly received by Plaintiff ***prior*** to January 4, 2014.  See LR56.B(3)(c).

## II.  mGage's response to facts alleged in Plaintiff's "Factual Background", but omitted from Plaintiff's Statement of Additional Material Facts.

Out of an abundance of caution and subject to mGage's objections set forth above, mGage responds to the factual allegations contained in the "Factual Background" set forth by Plaintiff in Section 1 of her Motion to Strike and/or Brief in Opposition to mGage's Motion for Partial Summary Judgment, but not Plaintiff's Statement of Additional Material Fact as follows:

17.     During his May 28, 2015 deposition, Mr. Scholl gave the following testimony:

Q.   And how long has Opera been a client of mGage?

A.   I believe since 2010. (Depo. Scholl, p. 13, 1. 21-23).

. . .

Q.   All right. And you mentioned that mGage relatively recently has undergone some restructuring. What type of restructuring is it undergoing?

A.   Back in late 2013 it went through bankruptcy.

Q.   And is it out of bankruptcy?

A.   It is out of bankruptcy. It's still something of a distressed asset, though.

Q.   Is mGage, LLC still in existence?

A.   It is.

Q.   And is it still operating?

A.   It is.

Q.   And is it still performing the platform services for Opera?

A.   It is.

(Depo. Scholl, p. 15, 1. 11-25; p. 16, 1. 1).

**Response:** Subject to and without waiving the objections described in the introductory section of this Response, mGage further objects to these factual allegations. mGage objects because Paragraph No. 17 does not comply LR56.1B(1) in that it contains more than a single fact. *See* LR56.1B(3)(c)

(permitting objections on the ground that respondent's fact is not material or does not otherwise comply with the provisions set out in LR56.1B(1).

Further, Plaintiff has cherry-picked through the record to create the picture most convenient to the argument – by skipping two pages of testimony and failing to cite to the intervening testimony concerning the Air2Web Agreement, which was Exhibit 8 to the Deposition of Harvey Scholl and clearly shows that it was Air2Web whose relationship with Opera started in 2010. Harvey Scholl's response was one of convenience and not to intentionally show that mGage existed in 2010. Just one page letter Plaintiff's counsel shows Mr. Scholl the "Air2Web Application and Services Agreement" on which the name mGage never appears.  See Docket No. 36-10 (Air2web agreement) and Docket No. 34-5 (Depo of Harvey Scholl, p. 15).

In the following set of lines, Plaintiff omits the portion of the deposition where Harvey Scholl explained that he was hired by Air2Web in 2008 and that Air2Web had been underlined(acquired) and underlined(restructured) numerous times before becoming what is now known as mGage.  See Docket No. 34-5 (Deposition of Harvey Scholl, p. 16).

17.    Between the time period of April 19, 2013 through July 2, 2014, Defendants sent a total of one hundred forty-nine (149) non-emergency text

18

messages to Plaintiffs cellular telephone number without Plaintiffs prior express consent. (Depo. Scholl, pp. 49, 53-55; Scholl Depo. Exs. 3-5; Depo. Jenkins, p. 7, 1. 17-23 & p. 55).

**Response:** mGage specifically objects to and disputes Paragraph No. 17(b)[3] because it is unsupported by movant's citation and the record in violation of LR 56.1(B)(1)(a).  Specifically, none of the exhibits cited by Plaintiff mention April 19, 2013 or confirm Plaintiff's assertion that Plaintiff began receiving text messages on that date.  Plaintiff testified that she first began receiving text messages from Opera in July or August.  [Docket No. 42, ¶ 121].

Additionally, mGage disputes the total number of texts allegedly sent by Defendants.  mGage does not dispute that Collette Jenkins <u>asserted</u> that she received 149 texts during the relevant time period; however the record is not clear how many texts Ms. Jenkins actually received.  mGage 0001 to 0058, also known as Ex. 3 to the Deposition of Harvey Scholl contains multiple repeat entries for the same message to the point that one would have to take great pains to determine the actual number of distinct texts.  [Docket No. 38-10].  mGage 0092 to 0097 (also known as Ex. 4 to the Deposition of Harvey Scholl) contains those messages

---

[3] Plaintiff's Factual Background contains two Paragraph No. 17s  To avoid confusion, mGage will refer to the second Paragraph No. 17 as Paragraph No. 17(b).

allegedly sent between January 1, 2014 and July 14, 2014.  [Docket No. 36-29].
This document shows 57 distinct messages, omitting the final text confirming that
the number had been opted out of Opera Nightclub Alerts.

mGage 0084- mGage 0091 (also known as Ex. 5 to the Deposition of
Harvey Scholl) contains those messages allegedly sent between September 26,
2013 and June 29, 2013; however all of these messages are from prior to July or
August of 2013, when Plaintiff first allegedly began to receive text messages from
Opera.  [Docket No. 34-6, p. 80-87; Docket No. 34-8, p. 55.]

Further, mGage did not send any text messages to Plaintiff.  mGage does not
send text messages to anyone.  mGage routes its clients text messages to the
carriers by connecting to the carriers' short messaging service centers ("SMSCs").
[Docket Nos. 42, ¶¶ 49, 53 and 91].   The carriers ultimately deliver the text
messages to individual recipients.  [Docket No. 42, ¶ 57].  Opera is responsible for
the content of all text messages received by Plaintiff.  [Docket No. 42-3, p. 11 and
Docket No. 42, ¶¶ 68, 70].  Further, Opera is responsible for selecting the recipient
of its text messages.   [Docket No. 42, ¶ 24].   Opera was responsible under its
Service Agreement with mGage for obtaining any consent required prior to send
out its promotional text messages. [Docket No. 42, ¶ 27].  Opera is responsible for
selecting the frequency, date, and time that text messages were sent to Plaintiff.

20

[Docket No. 42, ¶¶ 71-72]. The record shows that Opera is ultimately the party that sent out the text messages at issue in this case.

## III. mGage's response to facts alleged in the body of Plaintiff's Brief in Opposition, but omitted from Plaintiff's Statement of Additional Material Facts.

Out of an abundance of caution, mGage responds to the factual allegations contained solely in Sections II and III of Plaintiff's Motion to Strike and/or Brief in Opposition to mGage's Motion for Partial Summary Judgment, but not in Plaintiff's Statement of Additional Material Facts as follows:

### A. Section II-Plaintiff's Motion to Strike and For Sanctions[4]

4. While counsel for mGage, via email dated April 21, 2015 concerning mGage's discovery responses, stated,

"Mike:

Per our conversation, please see the agreement with Opera. You will see the agreement is with Air2Web. If you didn't know, mGage purchased Air2Web's assets out of Chapter 11 bankruptcy in approximately January 2014. I do not know who Social Study Media, LLC is, but I do know that the attached is the Opera agreement. I have not bates labeled at this point

---

[4] In the following two sections, mGage has attempted to select only paragraphs containing factual allegations not set forth previously in either the Statement of Additional Material Facts or the "Factual Background" to Plaintiff's Motion to Strike and/or Brief in Opposition; however any failure to respond to a factual allegation set forth in the Motion/Brief, is not an admission, but rather a consequence of the difficulty of identifying factual allegations when they are not set forth in accordance with LR56.1

> because I am out of town and wanted to get them to you. Also below are links to best practices referenced in the agreement.
>
> http://www.mmaglobal.com/files/uploads/Consumer-BestPractices.Pdf
>
> http://wmcglobal.com/media/CTIA-Short-Code-MonitoringHandbook-vl.4.1.pdf
>
> My client is actively working on gathering responsive documents and materials and we will supplement the discovery responses appropriately. I hope I adequately explained that the process is a cumbersome one, but I assure you we are working on it." ...

mGage failed to produce the of the documents (i.e. [Doc. 36-13 through Doc. 36-14 and Doc. 36-16 through Doc. 36-24]), which mGage relies upon for its Motion for Summary Judgment as to prior ownership.

**Response:**  mGage does not dispute the allegations set forth in Section II., Paragraph No. 4 of the Motion to Strike and/or Brief in Opposition; however, mGage does not understand the causal connection between counsel for mGage disclosing the bankruptcy, evidence which stands directly in contravention of Plaintiff's Motion to strike, and mGage's alleged "failure" to produce the documents upon which mGage relies in its Motion for Partial Summary Judgment. This email discusses the Air2Web Agreement that was produced as an attachment to the email as well as part of the first set of documents produced by mGage to Plaintiff.  See Docket Nos. 36-10 and 36-12.

mGage never produced many of the documents used to support its Motion for Partial Summary Judgment because Plaintiff never asked for such documents. See Response to Paragraph Nos. 11-15, above. mGage had no obligation to produce documents that were not requested. To the extent that Plaintiff believes that it did request such documents, Plaintiff had the ability, opportunity, and right to file a motion to compel production of such documents.

5. Coupled with this non-production is the fact that Mr. Scholl, mGage's designated corporate representative pursuant to Rule 30(b)(6), subsequently testified that mGage and Opera had the subject client relationship which resulted in the text messages being sent to Plaintiff since 2010, and that mGage had been in bankruptcy in 2013, but was now out of bankruptcy. (Depo. Scholl, pp. 13-16).

**Response:** Subject to and without waiving the objections described in the introductory section of this Response, mGage further objects to these factual allegations. mGage objects because Paragraph No. 5 does not comply LR56.1B(1) in that it contains more than a single fact. *See* LR56.1B(3)(c) (permitting objections on the ground that respondent's fact is not material or does not otherwise comply with the provisions set out in LR56.1B(1).

Further, Plaintiff continues to cherry-pick through the record to create an incomplete but more convenient picture to support her argument. For example,

Plaintiff states that Mr. Scholl testified that mGage and Opera's relationship started in 2010, without acknowledging the Air2Web Agreement, which was Exhibit 8 to the Deposition of Harvey Scholl and clearly shows that it was Air2Web whose relationship with Opera started in 2010. Harvey Scholl's response was not an admission that mGage existed in 2010. Just one page further in the deposition testimony Plaintiff's counsel shows Mr. Scholl the "Air2Web Application and Services Agreement" on which the name mGage never appears.  See Docket No. 36-10 (Air2web agreement) and Docket No. 34-5 (Depo of Harvey Scholl, p. 15).

One page later in the deposition testimony, Harvey Scholl explained that he was hired by Air2Web in 2008 and that Air2Web had been <u>acquired</u> and <u>restructured</u> numerous times before becoming what is now known as mGage.  See Docket No. 34-5 (Deposition of Harvey Scholl, p. 16).

**B. Section III- Plaintiff's, in the Alternative, Response in Opposition to mGage's [Doc. 36] Motion for Summary Judgment as to Liability During Previous Ownership**

Unnumbered, First Full Paragraph on Page 13: Accordingly, mGage cannot disclaim its prior knowledge of each and every time, prior to January 4, 2014, that it knew Plaintiff had asked for the text messages to stop. In addition to Mr. Scholl, it appears that both mGage and at least the entity referred to as Velti, employed the following same employee, Shijo George (email gshijo@mgage.com and

gshijo@velti.com), who was employed by Velti in April of 2013 and who held the position of Project Executive for mGage in March of 2014 (all throughout the relevant period of text messages sent to Plaintiff) and who corresponded with Opera's Rosanna Penaflorida throughout. (See Composite Exhibit "A" - Opera's Production Response Doc. Bates No. "DEF 0002" and mGage's Production Response Doc. Bates Nos. "mGage 0201" & "mGage 0287").

**Response:** mGage does not dispute the factual allegations of the second sentence set forth in the Unnumbered, First Full Paragraph on Page 13, however Plaintiff's first sentence is objectionable in that it does not stand for the proposition cited in that the second sentence, being used ostensibly as support for the first, does not actually support Plaintiff's allegation.  The continued employment by Velti and mGage through the Velti bankruptcy and transition would support the proposition that mGage knew that Opera was a client, but nothing further. Even without the continued employment of Shijo George and Harvey Scholl, mGage would have known about the Air2Web agreement because of the diligence done during the stalking horse purchase.  See Doc. No 36-22 (Disclosure to Stalking Horse Agreement showing assumption of Air2Web Contract).   Knowing that Opera was a client is not the same as knowing that Plaintiff was receiving texts from Opera or that she had sent response texts asking for the messages to stop.

This 26th day of October, 2015.

SCHOENTHALER LAW GROUP


/s/ Lauren M. Simons
Peter F. Schoenthaler
Georgia Bar No. 629789
Lauren M. Simons
Georgia Bar No. 410927
SCHOENTHALER LAW GROUP
400 Interstate N. Parkway, Suite 1500
Atlanta, Georgia 30339
pfs@pfslawgroup.com
lms@pfslawgroup.com
Tel:    (404) 855-3315
Fax:   (404)891-6120

*Attorneys for Defendant mGage, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 26, 2015, I electronically filed DEFENDANT MGAGE, LLC'S RESPONSE TO PLAINTIFF COLLETTE JENKINS' STATEMENT OF ADDITIONAL FACTS IN SUPPORT OF PLAINTIFF'S [DOC. 34] MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO MGAGE'S [DOC. 36] MOTION FOR SUMMARY JUDGMENT AND [DOC. 36-3] MEMORANDUM OF LAW IN SUPPORT) with the Clerk of Court using the CM/ECF system and via email pursuant to agreement by the parties to the following attorneys of record:

> Madeleine N. Simmons, Esq.
> Morgan & Morgan Atlanta, PLLC
> 191 Peachtree Street, Suite 4200
> P.O. Box 57007
> Atlanta, GA 30343
> Tel: 404.965.8811
> Fax: 404.965.8812
>
> Michael J. Vitoria, Esquire
> *Admitted Pro Hac Vice*
> Morgan & Morgan, Tampa, P.A.
> One Tampa City Center Tampa, FL 33602
> Tel: (813) 223-5505
> Fax: (813) 223-5402
> MVitoria@ForThePeople.com
> afloyd@forthepeople.com
>
> *Counsel for Plaintiff*
>
> Hayden R. Pace, Esq.

Jordan D. Arkin, Esq.
STOKES WAGNER HUNT LLC
MARETZ & TERRELL
1201 West Peachtree Street NW
Tel: (404) 766-0076
Fax: (404) 766-8823

*Counsel for Co-Defendant LL Atlanta*

Dated:  October 26, 2015         /s/ Lauren M. Simons
                                 Lauren M. Simons