IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| COLETTE JENKINS,<br><br>                      Plaintiff,<br><br>v.<br><br>LL ATLANTA, LLC, d/b/a OPERA NIGHTCLUB, and MGAGE, LLC,<br><br>                      Defendants. | 1:14-cv-2791-WSD |

**OPINION AND ORDER**

This matter is before the Court on mGage, LLC's ("mGage") "Motion to Dismiss Plaintiff's First Amended Complaint with Prejudice or in the Alternative Stay the Litigation Pending Primary Jurisdiction Review" [24] ("Motion to Dismiss"). Also before the Court is LL Atlanta, LLC, doing business as Opera Nightclub's ("Opera") "Motion to Stay Litigation Pending Primary Jurisdiction Review or Referral" [28] ("Motion to Stay").[1]

**I.     BACKGROUND**

This is an action for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"), which prohibits using an automatic telephone dialing system ("ATDS") to send a text message to a cellular

---

[1] The parties' motions for summary judgment [34, 36, 37] will be addressed in a separate order.

telephone for other than for emergency purposes or without the recipient's prior express consent.  See 47 U.S.C. § 227(b)(1)(A)(iii).

Plaintiff Colette Jenkins ("Plaintiff") asserts that, from September 2013 through April 2014, Defendants used an ATDS to send Plaintiff approximately seventy-five (75) text messages promoting events at a nightclub operated by Opera.  (Am. Compl. [15] ¶ 22).  Plaintiff claims that mGage is Opera's "digital marketing vendor," and that the text messages "were sent by Defendant, OPERA, or by its authorized agent and vendor, Defendant, mGage [], acting on behalf of Defendant, OPERA."  (Id. ¶¶ 15, 17).[2]  Plaintiff claims that she has never visited Opera's nightclub or requested information from Opera, and that she has no business affiliation with mGage.  (Id. ¶¶ 10-11).  Plaintiff alleges that she did not consent to receiving the text messages and that she continued to receive them even after she told Defendants more than ten (10) times to stop sending her text messages.  (Id. ¶¶ 18-21).

On August 28, 2014, Plaintiff filed her Complaint [1] against "Opera Night Club," asserting a single count for violation of the TCPA.  On January 2, 2015,

---

[2]   In the parties' Joint Preliminary Report and Discovery Plan, Opera "contends that, to the extent Plaintiff has received unauthorized marketing text messages send from or on behalf of [Opera], the digital marketing vendor known as mGage, LLC, may be liable for some or all of the acts and/or omissions set forth in the Plaintiff's Complaint." (Joint Prelim. Report & Discovery Plan [8] at 5).

2

Plaintiff amended her Complaint to correctly identify the entity that operates Opera Night Club, and to add mGage as a defendant in this action.

On March 2, 2015, mGage moved to dismiss Plaintiff's Amended Complaint for failure to state a claim for which relief can be granted.  In the alternative, mGage moves to stay this litigation pending the Federal Communications Commission's ("FCC") decision on the Petition for Expedited Declaratory Ruling on the Autodialer Issue, filed by Milton H. Fried, Jr. and Richard Evans, In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278 (the "FCC Petition").  mGage contends that the issue raised in the FCC Petition is whether a "mobile-messaging aggregator"—a combination of equipment used by separate entities to send text messages—"had liability under the TCPA for providing a conduit or pipeline to the public that a customer allegedly uses to send unsolicited text messages."  (mGage's Br. in Supp. [24.1] at 19).  mGage appears to argue that it employs technology similar to the technology at issue in the FCC Petition, and thus the FCC's decision would impact mGage's liability in this case.

On March 16, 2015, Opera filed its Motion to Stay, also based on the FCC Petition.  Opera did not move to dismiss Plaintiff's Amended Complaint.

On July 10, 2015, the FCC released its Declaratory Ruling and Order on the FCC Petition.  See In re Rules & Regs. Impl. the Tel. Cons. Prot. Act of 1991, Declaratory Ruling & Order, 30 FCC Rcd. 7961 (FCC 15-7) (2015).  The FCC concluded that "various pieces of equipment and software can be combined to form an autodialer, as contemplated by the TCPA.  The fact that these individual pieces of equipment and software might be separately owned does not change this analysis."  (Id. at 7978).[3]  Defendants' motions to stay are thus denied as moot.

The Court now turns to mGage's Motion to Dismiss.

## II. DISCUSSION

### A. Legal Standard

Dismissal of a complaint, pursuant to Rule 12(b)(6), is appropriate "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).  In considering a motion to dismiss, the Court accepts the plaintiff's allegations as true and considers the allegations in the complaint in the light most favorable to the plaintiff.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295 (11th Cir. 2007); see also Bryant v. Avado Brands, Inc.,

---

[3]   The Court does not express an opinion on how the FCC's conclusion may apply, if at all, in this case.

187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  The Court is not required to accept a plaintiff's legal conclusions as true.  See Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)), abrogated on other grounds by Mohamad v. Palestinian Auth., — U.S. —, 132 S. Ct. 1702 (2012).  The Court also will not "accept as true a legal conclusion couched as a factual allegation."  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The complaint, ultimately, is required to contain "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.

To state a plausible claim for relief, the plaintiff must plead factual content that "allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  "Plausibility" requires more than a "sheer possibility that a defendant has acted unlawfully," and a complaint that alleges facts that are "merely consistent with" liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Id. (citing Twombly, 550 U.S. at 557); see also Arthur v. JP Morgan Chase Bank, NA, 569 F. App'x 669, 680 (11th Cir. 2014) (noting that Conley's "no set of facts" standard has been overruled by Twombly, and a complaint must contain "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.").  "A complaint is insufficient if it 'tenders naked assertions devoid of

further factual enhancement.'" Tropic Ocean Airways, Inc. v. Floyd, 598 F. App'x 608, 609 (11th Cir. 2014) (quoting Iqbal, 556 U.S. at 678).

"To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims." Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1263 (11th Cir. 2004); see also White v. Bank of America, NA, 597 F. App'x 1015, 1017 (11th Cir. 2014) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.") (quoting Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002)).

B. Analysis

The TCPA "prohibits the use of an [ATDS] to 'make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) . . . to any telephone number assigned to a . . . cellular telephone service.'" Murphy v. DCI Biologicals Orlando, LLC, 797 F.3d 1302, 1305 (11th Cir. 2015) (quoting 47 U.S.C. § 227(b)(1)(A)(iii)). "The prohibition against auto dialed calls applies to text message calls as well as voice calls." Id. (citing In re Rules & Regs. Impl. the Tel. Cons. Prot. Act of 1991, 18 FCC Rcd. 14014, 14115 (2003) (affirming that prohibition against automatic telephone dialing in

§ 227(b)(1) "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls")); see also Campbell-Ewald Co. v. Gomez, 136 S.Ct. 663, 666-67 (2006) ("A text message to a cellular . . . telephone qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)."). To state a claim for violation of the TCPA, a plaintiff must show that a defendant called or texted a number assigned to a cellular telephone service using an ATDS. See, e.g., Breslow v. Wells Fargo Bank, N.A., 857 F. Supp. 2d 1316, 1320 (S.D. Fla. 2012).

mGage argues that Plaintiff fails to show that mGage sent, or can otherwise be held responsible for, the text messages at issue in this action. mGage contends that Plaintiff fails to identify each Defendant's role in the conduct alleged, and that Plaintiff fails to allege facts to support that mGage was Opera's agent. The Court disagrees.

In her Amended Complaint, Plaintiff asserts that Opera identified mGage as Opera's "digital marketing vendor" and that Opera "consented to and has knowledge and control of the marketing activities of its agents and representatives, including . . . agents, vendors . . . and/or contractors, specifically mGage." (Am. Compl. ¶¶ 9, 15). Plaintiff also alleges:

> Defendant, OPERA retained, hired, and/or contracted with mGage [], as its agent, for the purpose of sending, on behalf of

7

>Defendant, OPERA, unsolicitated [sic] text messages . . . to cellular telephones, including Plaintiff's cellular telephone number.
>
>Defendant, mGage [] . . . agreed to act as [] OPERA's agent for the purpose of sending, on behalf of Defendant, OPERA, unsolicitated [sic] text messages . . . to cellular telephones, including Plaintiff's cellular telephone number.
>
>Defendant, mGage [], operates a website which advertises its services of initiating, on behalf of its customers, a campaign management tool to acress [sic] mobile touchpoints, including text messages . . . and touts itself with [sic] the capability of delivering billions on [sic] monthly mobile messages across the globe.
>
>. . . Defendant, OPERA, later identified . . . mGage [], who was Defendant, OPERA's, digital marketing vendor, and which Defendant, OPERA, contends may be liable for some or all of the acts and/or omissions set forth in Plaintiff's complaint.
>
>. . .
>
>All of the text messages complained of herein were sent by Defendant, OPERA, or by its authorized agent and vendor, Defendant, mGage [], acting on behalf of Defendant, OPERA.

(Id. ¶¶ 12-15, 17).  At this stage of the litigation, the Court concludes that Plaintiff has alleged sufficient facts to support that mGage sent the text messages at issue. See Iqbal, 556 U.S. at 678.  mGage's Motion to Dismiss on this basis is denied.[4]

---

4  Plaintiff's theory of liability appears to be that Opera contracted with mGage to send text messages on Opera's behalf.  (See Am. Compl. ¶¶ 12-14, 17).  To the extent mGage argues that it is not liable under the TCPA because it was a "common carrier" or mere conduit for the messages, there are no facts currently before the Court to support mGage's argument.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 323 (2007) (On a motion to dismiss, courts "consider the complaint in its entirety, as well as . . . documents incorporated into the

8

mGage next argues that Plaintiff fails to allege facts to support that Defendants used an ATDS to send the text messages at issue in the Complaint. The TCPA defines an ATDS as "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator[;] and to dial such numbers."  47 U.S.C. § 227(a)(1).  The "defining characteristic of an ATDS is 'the capacity to dial numbers without human intervention.'"  Legg v. Voice Media Grp., Inc., 20 F. Supp. 3d 1370, 1374 (S.D. Fla. 2014) (quoting In re Rules & Regs. Impl. the Tel. Cons. Prot. Act of 1991, 18 FCC Rcd. 14014, 14092 (2003)).

Plaintiff claims that "each text message the Defendants sent to the Plaintiff was made using an [ATDS]" and she repeats the statutory definition in Section 227(a)(1).  (Am. Compl. ¶ 25).  Plaintiff alleges that the text message she received were advertisements, such as: "Don't miss the # do it for the Vine Party tonight @ Opera Wednesdays.  Show txt for Ladies Free till 11, 18+ $10.00 till 11, & 21+ $5 till 11!" and "Tonight @ Opera Wednesdays Lust, Love and Latex Party!  Arrive early and show txt for Ladies Free til 11, Guys 18+ till 11 & 21+ $5."  (Id. ¶ 16).

complaint by reference, and matters of which a court may take judicial notice."); cf. Murphy, 797 F.3d at 1305 ("A court may dismiss a complaint for failure to state a claim if an affirmative defense appears *on the face of the complaint*.") (emphasis added) (citing Fortner v. Thomas, 983 F.2d 1024, 1028 (11th Cir. 1993)). mGage's argument would be more appropriately raised at the summary judgment stage.  mGage's Motion to Dismiss on this basis is denied.

Plaintiff asserts that the text messages she received were sent from "67372"—a type of telephone number, sometimes called a "short code," that companies use to communicate with large numbers of consumers.  (Id. at Ex. A).

Plaintiff alleges that she replied to the text messages and asked the sender to stop sending her text messages, including because they were texting the wrong number, but that the sender did not respond to Plaintiff's text messages and she continued to receive text messages from the same sender.  (Id. ¶¶ 18-21, 39). Plaintiff also asserts that mGage "advertises its services of initiating, on behalf of its customers, a campaign management tool" "and touts itself with the capability of delivering billions on [sic] mobile messages across the globe."  (Id. ¶ 14).  These assertions, combined with the generic, impersonal nature of the text message advertisements and the use of a short code, support an inference that the text messages were sent using an ATDS.  See, e.g., Legg, 990 F. Supp. 2d at 1354 (plaintiff alleged facts sufficient to infer text messages were sent using ATDS; use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS); Kramer v. Autobytel, Inc., 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that defendants used an ATDS where messages were advertisements written in an impersonal manner and sent from short code); Hickey v. Voxernet LLC, 887 F. Supp. 2d 1125, 1130 (W.D. Wash.

2012) (on motion to dismiss, "allegation[s] regarding the generic content and automatic generation of the message [are] sufficient to infer the use of an ATDS"); Robbins v. Coca-Cola Co., No. 13-CV-132-IEG NLS, 2013 WL 2252646, at *3 (S.D. Cal. May 22, 2013) (observing that mass messaging would be impracticable without use of an ATDS).[5]  At this stage in the litigation, Plaintiff has alleged sufficient facts—albeit barely—to support that mGage used an ATDS to send the text messages at issue.  See Iqbal, 556 U.S. at 678 (To state a plausible claim for relief, the plaintiff must plead factual content that "allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). mGage's Motion to Dismiss on this basis is denied.

---

[5]  See also Gragg v. Orange Cab Co., No. C12-0576RSL, 2013 WL 195466, at *3 n.3 (W.D. Wash. Jan. 17, 2013) ("Plaintiffs alleging the use of a particular type of equipment under the TCPA are generally required to rely on indirect allegations, such as the content of the message, the context in which it was received, and the existence of similar messages, to raise an inference that an automated dialer was utilized.  Prior to the initiation of discovery, courts cannot expect more."); Torres v. Nat'l Enter. Sys., Inc., No. 12 C 2267, 2012 WL 3245520, at *3 (N.D. Ill. Aug. 7, 2012) (noting that, at the motion to dismiss stage, "it would be virtually impossible, absent discovery, for any plaintiff to gather sufficient evidence regarding the type of machine used for a communication left on a plaintiff's voicemail").

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that mGage, LLC's Motion to Stay, contained in its Motion to Dismiss [24], and LL Atlanta, LLC, doing business as Opera Nightclub's Motion to Stay [28], are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that mGage, LLC's Motion to Dismiss [24] is **DENIED**.

**SO ORDERED** this 9th day of March, 2016.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE